**EXHIBIT 3A**

**COMPLAINT**

## NON-COMPETE AND NON-SOLICITATION AGREEMENT
## CARE PLUS MANAGEMENT, LLC

THIS NON-COMPETE AND NON-SOLICITATION AGREEMENT (the "Agreement") made this _____ day of October, 2011 by ATHENS VASCULAR SURGERY ("AVS") and CARE PLUS MANAGEMENT, LLC (the "Company").

### WITNESSETH:

WHEREAS, AVS has a contract with AC ANESTHESIOLOGY, LLC which is partially owned by the Company; and

WHEREAS, the Company's business includes the providing of hospitalist services and the management of hospitalists services to hospitals and medical centers that employ hospitalists as well as to provide professional anesthesiology services to ambulatory surgical centers and other medical providers that need such services ancillary to their own medical services and the management of anesthesiologists and anesthesia practice groups and AC ANESTHESIOLOGY, LLC's business is to provide professional anesthesiology services to ambulatory surgical centers and other medical providers that need such services ancillary to their own medical services and the management of anesthesiologists and anesthesia practice groups; to exercise all other powers necessary to or reasonably connected with these businesses which may be legally exercised by limited liability companies under the Georgia Act; to engage in all activities necessary, customary, convenient, or incident to any of the foregoing; and to engage in any and all other business activities legally authorized; and

WHEREAS, AVS will be exposed to and stands to financially benefit from the Company's business plan through their mutual relationships with AC ANESTHESIOLOGY, LLC;

WHEREAS, AVS will obtain specific insight into the operations and business model of the Company;

NOW THEREFORE, in consideration of AVS' potential financial gain from its contract with AC ANESTHESIOLOGY, LLC that utilizes the specialized business plan of the Company, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, AVS agree as follows:

1. AVS hereby covenants and agrees that, during the period commencing on the date hereof and continuing for twelve (12) months following AVS voluntarily or involuntarily terminating business relations with AC ANESTHESIOLOGY, LLC (the "Non-Compete/Non-Solicitation Period"), AVS will not alone or in combination with others or in any manner whatsoever, without the prior written consent of the Company or all its Members:

    a. run, own, manage, operate, control, be employed by, provide consulting services to, be a manager of, participate in, lend his name to, invest in or be connected in any manner

with the management, ownership, operation or control of any business, venture, governmental or quasi-governmental agency, or activity that (A) competes with the business or any part thereof as conducted by the Company; or (B) in any way performs any activity or service that is the same as or similar to the type conducted, authorized, offered, or provided by the Company within two (2) years prior to disassociation with the Company. AVS will not be considered to be in default of this paragraph solely by virtue of his holding, for portfolio purpose, as a passive investor, not more than one percent (1%) of the issued and outstanding equity securities of a corporation, the equity securities of which art listed or quoted on a national stock exchange or a national over-the-Counter market;

b. undertake the planning or organization of any business activity competitive with the Company that will engage in any activity or service that is the same as or similar to the type conducted, authorized, offered, or provided by the Company or to directly or indirectly encourage any employees of the Company to terminate their employment with the Company in order to join such competitive business organization that will be engaged in any activity or service that is the same as or similar to the type conducted, authorized, offered, or provided by the Company either being planned or organized directly or indirectly by AVS;

c. contact, solicit, attempt to solicit, or accept business from any present or active prospective client or referral source of or to the Company, for the purposes of (A) providing any service provided by or competitive with those provided by the Company; or (B) inducing or attempting to induce such customer or referral source to cease doing business with or referring business to the Company, reduce the amount of business previously done or contemplated to be done by the Company for such customer, not engage the Company to provide services to the customer, or not refer customers to the Company for services. For purposes of this paragraph, the terms "customer" and "referral source" shall include, without limitation, any medical professional that appears on any Company database or Company list compiled for any Company purpose.

2. The Non-Compete/Non-Solicitation Period shall be computed by excluding from such computation any time during which AVS is in violation of any provision of the preceding paragraph and any time during which there is pending in any court of competent jurisdiction any action (including appeal front judgment) brought by any person, whether or not a party to this Agreement, which action contests the validity or enforceability of any such covenant or seeks to avoid the performance or enforcement of any such covenant if such action shall be resolved in a manner that upholds any claims of the Company or its Members.

3. As it concerns the actions of AVS under this Agreement, the specific business model of AVS in providing services at the time of this Agreement's execution are excluded from the terms of this Agreement to the extent of those services and AVS will not be deemed in violation of this agreement or restricted from providing services consistent with those provided by AVS at the time of execution of this agreement.

4. The provisions of this Agreement shall survive the termination and/or expiration of this Agreement for any reason whatsoever.

5. For purposes of this Agreement, the word "Indirectly" shall include (but not be limited to) acting through, or affecting the Company through, an intermediary or series of intermediaries, such as the use of or contact with independent contractors or other third parties.

6. In view of the irreparable harm and damage which would occur to the Company as a result of a breach or a threatened breach by AVS of this Agreement, and in view of the lack of an adequate remedy at law to protect the Company and its Members, the Company and/or its Members shall have the right to receive, and AVS hereby consents to the issuance of, temporary and permanent injunctions enjoining him from any violation of this Agreement. AVS acknowledges that an injunction is an appropriate remedy for such a breach or threatened breach and that the foregoing remedy shall be in addition to, and not in limitation of, any other rights or remedies to which the Company and/or its Members are or may be entitled at law or in equity under this Agreement. The provisions of this Agreement shall be enforceable in law and in equity notwithstanding the existence of any claim or cause of action by AVS against the Company and/or its Members, whether based on this Agreement or otherwise. Nothing herein shall be construed as prohibiting the Company and/or its Members from pursuing any other remedies available to them from such breach or threatened breach, including the recovery of monetary damages from AVS. If the Company and/or its Members incur any fees or costs in order to enforce the provisions of this Agreement and prevails in such enforcement, AVS agrees to pay all fees and costs so incurred by the Company and/or its Members, including, but not limited to, reasonable attorneys' fees and costs.

7. AVS has carefully read and considered this Agreement, and, having done so, agrees that the restrictions set forth herein are fair and reasonable and are reasonably required for the protection of the legitimate business interests of AVS and the Company. It is understood and anticipated that this Agreement shall be effective for the entirety of the United States, as such breadth of geographic scope is necessary because the Company performs business activities and services throughout the state of Georgia and the United States. AVS believes that the best protection which can be given to AVS and the Company which does not infringe on the rights of AVS to conduct any unrelated business is to provide for the restrictions described above. In the event any of said restrictions shall be held unenforceable by any court of competent jurisdiction, AVS agrees that it is its desire that such court shall substitute an enforceable restriction in place of any limitation deemed unenforceable and, as so modified, the restrictions shall be as fully enforceable as if they had been set forth herein. It is the intent of AVS that the court, in so establishing a substitute restriction, recognizes that AVS' desire that the restrictions described above be imposed and maintained to the maximum lawful extent. AVS acknowledges that it has sufficient material inducement to associate with the Company and to accept the provisions of this Agreement. Further, AVS hereby certifies that no representative or agent of AVS or the Company including AVS and the Company, have represented, expressly or otherwise, that AVS or the Company, would not seek to enforce this Agreement.  This Agreement shall be binding upon AVS as an

independent obligation and shall be enforceable even if there is or is claimed to be a breach of this Agreement or any other agreement, understanding, commitment or promise as between AVS or the Company.

IN WITNESS WHEREOF, the Parties have set their hands and affixed their seals the date and year first above written.

CARE PLUS MANAGEMENT, LLC

By: _____ (SEAL)
CARE PLUS MANAGEMENT, LLC,
MANAGER
PAUL WEIR, MANAGER

ATHENS VASCULAR SURGERY

By: _____ (SEAL)
DAVID SAILORS, M.D., President