# EXHIBIT 5A

# COMPLAINT

**NEW Anesthesiology, LLC**                                                      (706) 425-2239
194 Lakewood Drive                                                          FAX (706) 425-2369
Athens GA 30605

### EXCLUSIVE AGREEMENT FOR ANESTHESIA SERVICES

**1    PURPOSE OF AGREEMENT**

     This Agreement for Professional Anesthesia Services (the "Agreement") is made by and between **Gastroenterology PC** ("GASTRO"), and **NEW Anesthesiology** ("NEW ANESTH"), and is entered into effective as of the day of **March 23, 2012** ("Effective Date").

     In this agreement, GASTRO hereby retains **NEW ANESTH** to be a non-exclusive provider of Professional Services, as defined below, to its employed or contracted physicians at **GASTRO** and **NEW ANESTH** accepts such responsibility on the terms and conditions of this Agreement.

**2    TERMS**

    **2.1  Term and renewal:** This Agreement shall be effective as noted herein for a period of one (1) year, and shall automatically renew for additional one-year terms, subject to termination in accordance with the terms of this Agreement.

**3    CONTRACTUAL DEFINITIONS**

    For the purpose of this Agreement, the following terms are defined accordingly:

    **3.1**  "Agreement" means this Document and its content and contractual responsibilities and obligations.

    **3.2**  "Ancillary Administrative Services" means all of the non-Professional Services performed at **GASTRO** by Providers or personnel leased by **NEW ANESTH**, which are directly related, but ancillary to, the "Professional Services."

    **3.3**  "Anesthesiologist" means a physician licensed in the State of **South Carolina** and board certified in anesthesia who is under contract with **NEW ANESTH** to perform "Professional Services" to Patients under this Agreement.

    **3.4**  GASTRO " means any location that Athens Surgery Center physicians practice medicine and request the "Professional Services" of NEW ANESTH.

    **3.5**  "CRNA" means a certified registered nurse anesthetist licensed in the State of **South Carolina** who is under contract with **NEW ANESTH** to perform Professional Services to Patients under this Agreement.

    **3.6**  "Professional Services" means, except as otherwise provided by **GASTRO's** policies, services of a Provider in the practice of anesthesiology, including, without limitation, the performance of accepted procedures commonly used to render patients insensitive to pain during the performance of pain producing clinical measures and to relieve pain associated with medical syndromes and life-support functions associated with such services.

    **3.7**  "Provider" shall mean either or both an Anesthesiologist and/or CRNA under this Agreement.

**4    RESPONSIBILITIES OF NEW ANESTH**

    **4.1**  **Staffing Plan and Scheduling of Professional Services:** NEW ANESTH shall provide coverage and the services of Providers at GASTRO during the times described in the staffing plan attached hereto and incorporated herein as Exhibit A to this Agreement (the "Staffing Plan"). **NEW ANESTH** shall, in its judgment, retain and schedule a sufficient number of Providers to be expediently available to GASTRO in accordance with Exhibit A for the scheduling of procedures that require the presence of a Provider. **NEW**

ANESTH agrees that if a Provider is not available GASTRO may provide conscious sedation administered by GASTRO's physician and/or staff.  GASTRO and NEW ANESTH understand that GASTRO may require more Providers than is described in Exhibit A based on GASTRO's case volume. Additional Providers may be required either due to volume of cases or the nature of cases or procedures. GASTRO may instruct NEW ANESTH to provide additional Providers through at least **30-days prior written notice** of the same to NEW ANESTH. These additional Providers, if requested and provided by or through NEW ANESTH, will be considered part of the NEW ANESTH -provided coverage for the purposes of providing Professional Services at GASTRO.

4.2     **Provider Qualification:**  At all times during the term of this Agreement, NEW ANESTH shall ensure that:

    4.2.1     Each provider shall (a) hold a current valid and unlimited license to practice nursing in the State of **South Carolina** with appropriate certification in the provision of anesthesia; (b) obtain appropriate GASTRO staff privileges or receive and maintain temporary privileges, all in accordance with applicable GASTRO policies; (c) obtain the initial and continuing approval of GASTRO to provide the Professional Services hereunder, (d) not appear on the Office of Inspector General's List of Excluded Individuals/Entities, (e) maintain current ACLS, and (f) maintain a **$1,000,000/ 3,000,000** malpractice policy.

    4.2.2     NEW ANESTH shall be duly qualified and authorized to transact business in the States of **Georgia and South Carolina.**

4.3     **Continuous quality improvement and risk management:** In conjunction with GASTRO 's overall quality improvement and risk management programs, NEW ANESTH will develop and recommend procedures designed to achieve consistency and quality of the Professional Services provided by Providers. NEW ANESTH will participate in GASTRO 's overall quality improvement and risk management programs in accordance with GASTRO  policies and the policies of any acceptable accrediting organization including, but not limited to JCAHO, Medicare/Medicaid, State and AAAHC peer review.

4.4     **Applicable standards:**  NEW ANESTH shall ensure that all Providers under this Agreement deliver Professional Services in accordance with all appropriate requirements of Federal and State laws including appropriate and applicable Federal and State statutes and regulations and the standards of anesthesiology.

4.5     NEW ANESTH **Drugs and Supplies.** If requested by GASTRO in the performance of its Professional Services, NEW ANESTH will reimburse GASTRO for the anesthetic drugs or purchase the drugs separately and reimburse GASTRO for cost of secure storage.

5     **RESPONSIBILITIES OF GASTRO**

5.1     **Qualifications:**  At all times during the existence of this Agreement, GASTRO shall own, operate and maintain GASTRO as a duly qualified, certified and licensed ambulatory surgery center in conformity with all applicable federal, state and local laws, rules and regulations.  GASTRO shall obtain or cause to be obtained and shall maintain or cause to be maintained, at GASTRO's sole expense, any and all licenses or permits required in connection with the operation of GASTRO including, without limitation, the performance of all Professional Services required under this Agreement at GASTRO as contemplated under the terms of this Agreement.

5.2     **Provision of Equipment/Supplies:**  GASTRO shall be responsible for and shall make available or cause to be made available all space,  materials, trained competent personnel, and support services reasonably required or requested by NEW ANESTH and approved by GASTRO (such approval not to be unreasonably withheld) needed for NEW ANESTH 's effective performance of the Professional Services at GASTRO and to discharge its duties under this Agreement in conformity with all applicable and reasonable standards of care.  All such space, materials, support services, and other resources supplied or provided by GASTRO shall be of reasonable character, quality, and quantity approved by NEW ANESTH and shall in all instances meet all requirements imposed under federal, state and local laws, rules and regulations and all accrediting agency or governing body standards imposed or required for the provision of the Professional Services to the Patients at GASTRO.   In addition, GASTRO shall provide

or cause to be provided all cleaning, washing, repacking, and sterilization of the equipment and supplies (including, without limitation, central supply services and autoclave services) required in connection with the performance of the Professional Services at the Facility.  GASTRO shall be solely responsible for all cost and expenses incurred in connection with the fulfillment of its responsibilities hereunder.

5.3   **Patient Scheduling:**  GASTRO shall be responsible for scheduling all Patients requiring the Professional Services at GASTRO.  To the extent possible, GASTRO shall schedule such medical services in a consecutive order with one case promptly following the preceding case without delay.  At the time of providing the applicable scheduling notice, GASTRO shall also inform NEW ANESTH of any insurance or other reimbursement or billing information pertaining to those Patients listed on such schedule.  All Professional Services required by GASTRO shall be rendered in accordance with Exhibit A.  The last scheduled surgical case requiring Professional Services shall be in accordance with Exhibit A, unless otherwise authorized by NEW ANESTH in advance thereof.  Unless otherwise agreed to by NEW ANESTH, all Professional Services shall be performed only at GASTRO.  GASTRO shall arrange for each Patient to be physically available at GASTRO at a designated time and date (which may or may not immediately precede the performance of the applicable Professional Services) for the purpose of allowing NEW ANESTH and its representatives to conduct an appropriate pre-anesthetic screening examination of such patient.

5.4   **Patient Medical Profile:**  In advance of NEW ANESTH's rendering of any Professional Services to any Patient, GASTRO shall deliver to and obtain from each such Patient a medical profile questionnaire in such form as provided by NEW ANESTH which profile shall include, without limitation, the history and copies of appropriate pre-surgical lab and diagnostic tests for such Patient and be of such other content and contain such other information as NEW ANESTH shall require in order to evaluate the physical and medical condition of such Patient.  GASTRO shall provide NEW ANESTH with each such completed medical profile sufficiently in advance of the rendering of any applicable Professional Services to such Patient so that NEW ANESTH may properly evaluate and administer the Professional Services required for such Patient.

5.5   **Patient Consent and Notification Forms:**  GASTRO shall deliver to and obtain from each Patient on whose behalf any Professional Services are rendered, a consent and agreement specifying that (a) the Professional Services being provided by NEW ANESTH to such Patient shall be rendered by a qualified representative of NEW ANESTH, (b) such Patient shall be receiving a separate invoice for the Professional Services from NEW ANESTH, and (c) such Patient shall be responsible for payment of all fees charged by NEW ANESTH in rendering the Professional Services.  Such consent and agreement shall be in a form provided by NEW ANESTH in connection with such Patient's receipt of any Professional Services hereunder.  GASTRO shall be responsible for obtaining a duly executed copy of such consent form from each Patient or legal guardian of such Patient requiring the Professional Services at GASTRO and shall provide NEW ANESTH with a copy thereof prior to NEW ANESTH's rendering of any Professional Services to such Patient hereunder.

5.6   **Business Structure and Authority:**  GASTRO covenants, warrants and represents that (a) it is a legal business entity duly organized, validly existing and in good standing under the laws of the State of **South Carolina**, (b) it has all necessary corporate/company power and authority to enter into this Agreement, to execute any and all instruments pursuant to this Agreement, and to perform its obligations hereunder, including any and all functions and duties incidental to fulfilling the purposes of this Agreement, (c) the respective execution of this Agreement by GASTRO's undersigned representative(s) has been duly authorized and constitutes GASTRO's legally binding and fully enforceable obligations and undertakings; and (d) GASTRO is not excluded from participation in any federal health care program and has not and will not appear on the Office of Inspector General's List of Excluded Individuals/Entities.

6   **MUTUAL COVENANTS OF NEW ANESTH AND GASTRO**

6.1   **Removal of Provider.**  If GASTRO desires to withdraw approval of a Provider, GASTRO must give 45 days prior written notice to NEW ANESTH stating the reason or reasons for withdrawal.  NEW ANESTH may attempt to remediate the situation during the 45-day period, but unless the situation is successfully remedied, NEW ANESTH will be required to remove said Provider from GASTRO at the end of the 45-day notice period.

6.2   **Standards for Immediate Removal of a Provider:** **NEW ANESTH** will immediately remove a Provider who (a) suffers the loss or suspension of his or her license to practice medicine or nursing, (b) becomes excluded from participation in any federal health care program, (c) is convicted of any crime punishable as a felony involving moral turpitude, immoral conduct, or the provision of health care services, (d) suffers the loss, suspension or revocation of their DEA registration or (e) is impaired by alcohol or drugs.

6.3   **Billing for Anesthesia Professional Services:** **NEW ANESTH** shall have the exclusive responsibility for the billing and collection of all charges for Professional Services rendered by Providers supplied by **NEW ANESTH** at **GASTRO**. **NEW ANESTH** shall separately bill and collect for Professional Services furnished by Providers to Patients. **NEW ANESTH** recognizes that it will provide Pro Bono services to patients covered by Federal health care programs, and will not bill any Federal health care program for services provided. Should **NEW ANESTH's** practices in regard to billing Federal health care programs change during the term of this agreement, **NEW ANESTH** agrees to immediately notify **GASTRO** of such change, but this notification shall, in no manner, be a request or indication that **GASTRO** should make any present or future referral decision based on the change. **NEW ANESTH** shall comply with all requirements of the Medicare and Medicaid Programs and other third-party payer programs in billing for Professional Services. **NEW ANESTH** will submit to **GASTRO** a Professional Services fee schedule for self-pay patients that it will periodically update. **NEW ANESTH**'s fee schedule will be submitted to **GASTRO** in accordance with all federal and state law, annually or upon occurrence of rate changes. **GASTRO** shall have no liability for any uncollected charges.

6.4   **Billing Assistance:** **GASTRO** shall provide **NEW ANESTH** a copy of each Patient's admission record, charge ticket, and anesthesia record for which Professional Services are provided in order to assist **NEW ANESTH** in collection of funds due for such Professional Services rendered at **GASTRO** under this agreement. **NEW ANESTH** agrees to waive all patient co-pays, deductible or other out-of-pocket costs to any **GASTRO** employee who receives anesthesia by **NEW ANESTH**. **NEW ANESTH** will provide free anesthetic to indigent cases in which **GASTRO** and physicians at **GASTRO** provide free services.

6.5   **Medical records:** **NEW ANESTH** will work with Providers to ensure that all medical records are properly prepared and filed with the appropriate attending Provider and **GASTRO** 's medical records department, including reports of all examinations, procedures and other services performed by a Provider in **GASTRO**. The ownership and right of control of such medical records shall vest in **GASTRO**; provided, however, that **NEW ANESTH** and the Provider shall have the right of access to such records consistent with law as necessary or requested by **NEW ANESTH** or Provider for purposes of treatment, billing and healthcare operations or the defense or prosecution of any claim.

6.6   **Production of Medical Records:** Both parties agree to provide each other such Patient medical records as are customary and necessary to the maintenance and evaluation of an appropriate quality of medical care on a timely basis. In addition, the parties shall submit to each other on a timely basis a record of all services (medical and otherwise) rendered to patients and such reports as are customarily supplied in order for the parties to bill their patients and third-party payers for Professional Services provided in **GASTRO**.

6.7   **Third-party payer requirements:**

6.7.1   **NEW ANESTH** acknowledges that **GASTRO**, from time to time, may have and execute agreements with health plans, health maintenance organizations, the Medicare or Medicaid programs or other public or private health care programs or insurance to provide benefits for health care services, including Professional Services, to the enrollees or other Patients covered by such agreements. **NEW ANESTH** will use its best efforts to ensure that **NEW ANESTH** and Providers under this Agreement participate in the same third party payer agreements as **GASTRO**, to assist in providing services that are covered under the Patients' benefit plans. At this time **NEW ANESTH** is contracted with _____.

6.7.2   **NEW ANESTH** agrees to make available to **GASTRO** such information and records as **GASTRO** may reasonably request to facilitate **GASTRO** 's validation of reasonable cost or other claims for reimbursement in accordance with the requirements applicable to **GASTRO** pursuant to the Medicare and Medicaid programs.

6.7.3   Additionally, **NEW ANESTH** agrees to make available upon request of the Secretary of Health and Human Services, the Controller General of the United States or any of their duly

assigned representatives, this Agreement, and any books, documents, and records of v, as are necessary to certify the nature and extent of its contract. If NEW ANESTH shall carry out any of its duties under this Agreement through subcontractors under a contract with a value or cost of $10,000 or more over a 12-month period, such contracts shall include a requirement consistent with this subparagraph.

6.8    **Confidentiality:** Neither GASTRO nor NEW ANESTH shall disclose any privileged or confidential information which either obtains or learns as a result of this Agreement except as may be required in connection with audits conducted by third-party payers. GASTRO and NEW ANESTH shall maintain the confidentiality of any medical records, business or financial records, and matters of practice of the other to which either shall have access or knowledge in compliance with each other's policies and any applicable state or federal law. In furtherance of these practices, the parties acknowledge and agree that their respective rendering of professional medical services to Patients is being made pursuant to an "organized health care arrangement" with each of GASTRO and NEW ANESTH constituting a "covered entity" as those terms are defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Part 160 and Part 164, Subparts A and E (the "Privacy Rule"), promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (collectively "HIPAA"). As a consequence, GASTRO shall be exclusively responsible for (i) producing and providing to each Patient a joint notice (the "Joint Notice") conforming to the requirements imposed and in the manner of implementation required under HIPAA Regulation Sections 164.520(c) and (d) and (ii) documenting compliance with the provision of such Joint Notices to the Patients and retaining copies of all such Joint Notices so issued and any applicable acknowledgements of receipt thereof all in conformity with HIPAA Regulation Sections 164.520(e) and 164.530(j). GASTRO agrees to provide to NEW ANESTH in advance a copy of any proposed Joint Notice intended to be utilized as contemplated hereunder for NEW ANESTH 's review and approval. Upon agreement of all parties as to the form and content of the Joint Notice, each party agrees to abide by the terms of such approved Joint Notice with respect to all protected health information created or received by such party as part of its participation in such organized health care arrangement. GASTRO is responsible for the maintenance and filing of all Patient medical records for so long as is required by all applicable laws, rules or regulations issued by any authority having jurisdiction over GASTRO.

6.9    **Professional Liability Insurance:**

6.9.1    NEW ANESTH agrees to furnish to GASTRO, upon execution of this Agreement and thereafter upon request, a certificate of insurance indicating liability insurance coverage of at least $1,000,000 for any one occurrence and $3,000,000 annual aggregate, which coverage may be a combination of professional and entity liability coverage. In addition, NEW ANESTH shall ensure that each Provider maintains professional liability insurance coverage with limits of $1,000,000 for each occurrence and $3,000,000 annual aggregate. Such certificates shall reflect that GASTRO shall be given 30-days prior written notice of cancellation or termination of the policy. Further, if the insurance policies are written on claims-made basis, NEW ANESTH and it providers will purchase "tail coverage" as necessary to ensure that any claims arising from Professional Services will be covered by insurance. This requirement will survive the termination of this Agreement.

6.9.2    GASTRO agrees to furnish to NEW ANESTH, at its request, a certificate of insurance indicating liability insurance coverage of at least $1,000,000 for any one occurrence and $3,000,000 annual aggregate, which coverage may be a combination of professional and entity liability coverage. In addition, GASTRO shall ensure that each GASTRO physician performing services at GASTRO maintains professional liability insurance coverage with limits of $1,000,000 for each occurrence and $3,000,000 annual aggregate. Such certificates shall reflect that NEW ANESTH shall be given 30-days prior written notice of cancellation or termination of the policy. Further, if the insurance policies are written on claims-made basis, GASTRO and its physicians will purchase "tail coverage" as necessary to ensure that any claims arising from its medical services will be covered by insurance. This requirement will survive the termination of this Agreement.

6.10   **Offers to the NEW ANESTH Anesthesiologists, CRNAs and Personnel:** GASTRO recognizes that NEW ANESTH will incur substantial expenses associated with recruiting and staffing Providers for the Professional Services anticipated herein. In consideration of the special nature of

the relationship between **NEW ANESTH** and the Providers which **NEW ANESTH** does or will retain or employ and that **NEW ANESTH's** expenses associated with recruiting and training of such personnel is a costly and time consuming endeavor, **GASTRO** agrees that it will not, during the Term or any renewals hereof, or for a period of one (1) year following the termination of this Agreement, directly or indirectly enter into any agreement covering the same or similar Services as are provided for herein with any person who has provided Services to **GASTRO** under this Agreement unless **NEW ANESTH** provides written consent and a compensatory fee in the amount of $125,000 per Provider is paid to **NEW ANESTH**. The terms of such payment shall be set forth in the written consent. **GASTRO** shall be responsible for paying any legal expense incurred by **NEW ANESTH** in obtaining or enforcing payment of the compensatory fee contemplated herein.

## 7    TERMINATION OF AGREEMENT

7.1    **Effects of termination:** Upon termination of this Agreement, neither party shall have any further obligation hereunder except for (a) obligations occurring prior to the date of termination; or, (b) obligations, promises or covenants contained herein which are expressly made to extend beyond the term of this Agreement.

7.2    **Termination Notice:** Either party may give 30 days written notice of intent to terminate this Agreement with explanations as to the reason for desiring to terminate and this Agreement shall be deemed terminated at the end of the 30-day period if (1) the party receiving notice of termination has breached any of the conditions of this Agreement and fails to cure such breach within 30 days from the receipt of a termination notice describing the breach or (2) all debt incurred by **NEW ANESTH** within the first ninety (90) days of providing professional services under this Agreement has been satisfied, without regard to the reason for termination, or (3) all parties to the Agreement agree to terminate the Agreement. In the event notice of termination of this Agreement is provided, all services and obligations under the Agreement shall continue through the period of notice.

## 8    INDEMNIFICATION

8.1    **Indemnity of GASTRO:** **NEW ANESTH** agrees to indemnify, defend and hold **GASTRO**, its owners, officers, directors, employees and agents harmless from any loss, liability, claims, suits and reasonable expense arising from the negligent or intentional actions or omissions of **NEW ANESTH** or the Providers supplied by **NEW ANESTH** under this Agreement, such indemnification to be provided only for damages awarded in excess of professional or entity liability insurance carried by **NEW ANESTH**.

8.2    **Indemnity of NEW ANESTH:** **GASTRO** agrees to indemnify, defend and hold **NEW ANESTH**, its owners, officers, directors, employees and agents harmless from any loss, liability, claims, suits and reasonable expense (including attorneys' fees) arising from the negligent or intentional actions or omissions of **GASTRO** or its employees under this Agreement, such indemnification to be provided only for damages awarded in excess of professional or entity liability insurance carried by **GASTRO**.

## 9    MISCELLANEOUS

9.1    **Independent Contractor Status of NEW ANESTH:** It is expressly acknowledged by the parties hereto that **NEW ANESTH** is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create an employer-employee relationship or a joint venture relationship between **GASTRO** and **NEW ANESTH**, or to allow **GASTRO** to exercise control or direction over the manner or method by which **NEW ANESTH** or the Providers perform the Ancillary and Professional services anticipated under this Agreement. **NEW ANESTH** understands and agrees that (a) the Providers will not be treated as employees for Federal tax purposes; (b) **GASTRO** will not withhold on behalf of **NEW ANESTH** or the Providers pursuant to this Agreement, any sums for income tax, unemployment insurance, Social Security or any other withholding pursuant to any law or requirement of any governmental body; or (c) **GASTRO** will not make available to **NEW ANESTH** or the Providers any of the benefits afforded to the employees of **GASTRO**. Any such payments, withholdings and benefits, if any, are the sole responsibility of **NEW ANESTH** and/or the Providers.

9.2     **Compliance with Law; Change of Law:** It is the express intent of the parties hereto to comply in all respects with the provisions of both Federal and State laws regarding kickbacks, referrals and the corporate practice of medicine, and all services provided hereunder are provided at the fair market value of such services. In the event of (a) the adoption, amendment or repeal of any ordinance, statute, regulation or administrative instructions, or (b) the issuance of any decision by a judicial or administrative body of competent jurisdiction, the effect of which is either to cause any word, phrase, sentence or section of this Agreement to constitute a violation of law, or to have a material adverse effect on the practical realization of the benefits anticipated by any party; or (c) a written opinion issued by independent legal counsel retained by any Party which concludes that any word, phrase, sentence or section of this Agreement is likely to result in a Party being viewed by the relevant enforcement agencies as in violation of any law, then such Party (the "Noticing Party ") shall have the right to deliver written notice hereof to the other Parties setting forth the word, phrase, sentence or section in question, the actual or potential violation of law and the basis upon which the Noticing Party has concluded that a Party has or is likely to be viewed as having violated said law and/or the basis for Noticing Party's conclusion that there is a material adverse effect on the practical realization of the benefits anticipated by a Party; provided, in the event the Noticing Party's basis for such a notice, in whole or in part, is a written opinion issued by its independent legal counsel, the Noticing Party shall deliver a copy of said opinion as part of the Notice it delivers to the other Party; provided, further, shall include one or more proposed amendments to this Agreement which shall be intended to cure such actual or potential violation of law and/or to the extent reasonable to restore the status quo ante, cure the material adverse effect on the realization of the benefits anticipated by a Party. In the event the Parties are not able to agree upon and enter into one or more amendments to this Agreement, which are intended to cure said actual or potential breach of law and/or, to the extent reasonable, restore the status quo ante, within sixty (60) days after the delivery of the Noticing Party's notice, any Party may terminate this Agreement, without cause, on a date certain by delivering notice of its intention to the non-terminating Parties not less than thirty (30) days prior to said date.

9.3     **Governing law:** This Agreement has been executed and delivered and shall be interpreted, construed, and enforced pursuant to and in accordance with the laws of the State of Georgia and the parties agree that the venue for any dispute under this Agreement shall rest exclusively in the Superior Court of Oconee County, Georgia.

9.4     **Assignment:** No assignment of this Agreement or rights of obligation hereunder shall be valid without the specific written consent of both parties hereto, which consent shall not be unreasonably withheld, except that NEW ANESTH may assign this Agreement without consent of GASTRO to an affiliate of NEW ANESTH or to any successor in interest in connection with the sale or transfer of all or substantially all of NEW ANESTH 's assets, provided that NEW ANESTH provides GASTRO with 30 days advance written notice of any assignment and any other reasonable information concerning the assignee requested by GASTRO.

9.5     **Waiver of breach:** The waiver by either party of a breach or a violation of any portion of this Agreement in any one instance shall not operate as or be construed to be a waiver of any subsequent breach of the same or other provision hereof.

9.6     **Enforcement:** The parties agree that all disputes concerning this Agreement shall be submitted to binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association and the provisions contained herein. The arbitration shall be conducted in Athens, Georgia by one arbitrator. The party initiating arbitration shall give the other party notice of the matter in dispute. If the parties fail to agree upon an arbitrator within ten (10) days after notice of initiation of the arbitration is given, then the American Arbitration Association shall select the arbitrator. All determinations and the final decision of the arbitrators shall be made in writing. The fees and expenses of the arbitrators shall be awarded by the arbitrators in their discretion as part of the award. The arbitrator's award shall be binding on the parties hereto and may be entered in any court of competent jurisdiction.

9.7     **Force Majeure:** Neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service or employment deemed resulting directly or indirectly from acts of God, civil or military authority, acts of public enemy, terrorism, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, strikes or any similar or dissimilar cause beyond the reasonable control of either party.

9.8     **Severability:** The validity or unenforceability of any provision of this Agreement shall not affect the remainder of this Agreement which shall remain in full force and effect in accordance with its terms.

**9.9**     **Article and other headings, Interpretation:** The articles and other headings contained in this Agreement are for reference purposes only and shall not affect, in any way, the meaning or interpretation of this Agreement. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, structured, dictated or required such provision.

**9.10**   **Amendments and agreement execution:** This Agreement and any amendments hereto shall be in writing and may be executed in multiple copies, with each copy being deemed an original but all multiple copies together shall constitute one and the same instrument. No modification or amendment to this Agreement shall be valid unless done as set forth herein.

**9.11**   **Entire Agreement:** This Agreement supersedes all previous contracts and constitutes the entire agreement between the parties. Neither party shall be entitled to benefits other than those specified herein. No oral statements or prior written material, not specifically incorporated herein, shall be of any force and effect, and no changes in or additions to this Agreement shall be recognized unless incorporated herein by amendment as provided herein. Both parties specifically acknowledge that in entering into and executing this Agreement, they rely solely upon the representations and covenants contained in this Agreement and no others.

**9.12**   **Notices:** Any notice, demand or communication required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered, mailed by a prepaid certified mail return receipt requested addressed, or emailed as follows:

| To GASTRO: | | To NEW ANESTH: |
|---|---|---|
| Gastroenterology  PC | | NEW Anesthesiology |
| 3330 Ridge Road | | 1071 Lancaster Court |
| Athens, GA 300 | | Bogart, GA 30672 |
| Email: | | Email: |
| Attn: | | Attn: John Morgan |

or to such other address and to the attention of such other persons or officers as either party may designate by written notice.

**IN WITNESS WHEREOF**, the parties have signed this Agreement to be effective as of the date set forth above:

**For GASTRO:**  Gastroenterology PC

Name: _____     Date: _____
          Dr.

**For NEW ANESTH:**     NEW Anesthesiology
                        1071 Lancaster Court
                        Bogart, GA 30672

Name: _____     Date: _____
          Paul Weir

**EXHIBIT A**

# Staffing Plan and Hours of Coverage:

The Staffing Plan and Hours of Coverage shall be as follows:

**Facility Location(s):**

**Operating Room(s):**

**Procedure Room(s):** up to 0

**CRNA(s):**

**Weekday start time:** 15 minutes prior to first case

**Weekday end time:** until last case prior to 5pm