EXHIBIT 5B

COMPLAINT

AU Anesthesia, LLC  
2470 Daniels Bridge, Bldg. 100, Ste. 141  
Athens GA 30606

(706) 425-2239  
FAX (706) 225-7217

## EXCLUSIVE AGREEMENT FOR ANESTHESIA SERVICES

1    **PURPOSE OF AGREEMENT**

This Agreement for Professional Anesthesia Services (the "Agreement") is made by and between Georgia Surgi Care ("GSC"), and AU Anesthesia ("AU ANESTH"), and is entered into effective as of the day of October 23, 2012 ("Effective Date").

In this agreement, GSC hereby retains AU ANESTH to be the exclusive provider of Professional Services, as defined below, to its employed or contracted physicians at GSC and AU ANESTH accepts such responsibility on the terms and conditions of this Agreement.

2    **TERMS**

    2.1  Term and renewal: This Agreement shall be effective as noted herein for a period of one (1) year, and shall automatically renew for additional one year terms, subject to termination in accordance with the terms of this Agreement; provided, however, either party, at any time, may terminate this Agreement upon 60-days prior written notice.

3    **CONTRACTUAL DEFINITIONS**

For the purpose of this Agreement, the following terms are defined accordingly:

    3.1  "Agreement" means this Document and its content and contractual responsibilities and obligations.

    3.2  "Ancillary Administrative Services" means all of the non-Professional Services performed at GSC by Providers or personnel leased by AU ANESTH, which are directly related, but ancillary to, the "Professional Services."

    3.3  "Anesthesiologist" means a physician licensed in the State of Georgia and board certified in anesthesia who is under contract with AU ANESTH to perform "Professional Services" to Patients under this Agreement.

    3.4  " GSC " means any location that Georgia Surgi Care physicians practice medicine and request the "Professional Services" of AU ANESTH.

    3.5  "CRNA" means a certified registered nurse anesthetist licensed in the State of Georgia who is under contract with AU ANESTH to perform Professional Services to Patients under this Agreement.

    3.6  "Professional Services" means, except as otherwise provided by GSC's policies, services of a Provider in the practice of anesthesiology, including, without limitation, the performance of accepted procedures commonly used to render patients insensitive to pain during the performance of pain producing clinical measures and to relieve pain associated with medical syndromes and life-support functions associated with such services.

    3.7  "Provider" shall mean either or both an Anesthesiologist and/or CRNA under this Agreement.

4    **RESPONSIBILITIES OF AU ANESTH**

    4.1  Staffing Plan and Scheduling of Professional Services: AU ANESTH shall provide coverage and the services of Providers at GSC during the times described in the staffing plan attached hereto and incorporated herein as Exhibit A to this Agreement (the "Staffing Plan"). AU ANESTH shall, in its judgment, retain and schedule a sufficient number of Providers to be expediently available to GSC in

accordance with Exhibit A for the scheduling of procedures that require the presence of a Provider. AU ANESTH agrees that if a Provider is not available GSC may provide conscious sedation administered by GSC's physician and/or staff. GSC and AU ANESTH understand that GSC may require more Providers than is described in Exhibit A based on GSC's case volume. Additional Providers may be required either due to volume of cases or the nature of cases or procedures. GSC may instruct AU ANESTH to provide additional Providers through at least 30-days prior written notice of the same to AU ANESTH. These additional Providers, if requested and provided by or through AU ANESTH, will be considered part of the AU ANESTH -provided coverage for the purposes of providing Professional Services at GSC.

4.2 Provider Qualification: At all times during the term of this Agreement, AU ANESTH shall ensure that:

4.2.1 Each provider shall (a) hold a current valid and unlimited license to practice nursing in the State of Georgia with appropriate certification in the provision of anesthesia; (b) obtain appropriate GSC staff privileges or receive and maintain temporary privileges, all in accordance with applicable GSC policies; (c) obtain the initial and continuing approval of GSC to provide the Professional Services hereunder, (d) not appear on the Office of Inspector General's List of Excluded Individuals/Entities, (e) maintain current ACLS, and (f) maintain a $1,000,000/ 3,000,000 malpractice policy.

4.2.2 AU ANESTH shall be duly qualified and authorized to transact business in the State of Georgia.

4.3 Continuous quality improvement and risk management: In conjunction with GSC 's overall quality improvement and risk management programs, AU ANESTH will develop and recommend procedures designed to achieve consistency and quality of the Professional Services provided by Providers. AU ANESTH will participate in GSC 's overall quality improvement and risk management programs in accordance with GSC policies and the policies of any acceptable accrediting organization including, but not limited to JCAHO, Medicare/Medicaid, State and AAAHC peer review.

4.4 Applicable standards: AU ANESTH shall ensure that all Providers under this Agreement deliver Professional Services in accordance with all appropriate requirements of Federal and State laws including appropriate and applicable Federal and State statutes and regulations and the standards of anesthesiology.

4.5 AU ANESTH Drugs and Supplies. If requested by GSC in the performance of its Professional Services, AU ANESTH will reimburse GSC for the anesthetic drug propofol or purchase the drug separately and reimburse GSC for cost of secure storage.

5 **RESPONSIBILITIES OF GSC**

5.1 Qualifications: At all times during the existence of this Agreement, GSC shall own, operate and maintain GSC as a duly qualified, certified and licensed office based practice or surgery center in conformity with all applicable federal, state and local laws, rules and regulations. GSC shall obtain or cause to be obtained and shall maintain or cause to be maintained, at GSC's sole expense, any and all licenses or permits required in connection with the operation of GSC including, without limitation, the performance of all Professional Services required under this Agreement at GSC as contemplated under the terms of this Agreement.

5.2 Provision of Equipment/Supplies: GSC shall be responsible for and shall make available or cause to be made available all space, materials, trained competent personnel, and support services reasonably required or requested by AU ANESTH and approved by GSC (such approval not to be unreasonably withheld) needed for AU ANESTH 's effective performance of the Professional Services at GSC and to discharge its duties under this Agreement in conformity with all applicable and reasonable standards of care. All such space, materials, support services, and other resources supplied or provided by GSC shall be of reasonable character, quality, and quantity approved by AU ANESTH and shall in all instances meet all requirements imposed under federal, state and local laws, rules and regulations and all accrediting agency or governing body standards imposed or required for the provision of the Professional Services to the Patients at GSC. In addition, GSC shall provide or cause to be provided all cleaning, washing, repacking, and sterilization

of the equipment and supplies (including, without limitation, central supply services and autoclave services) required in connection with the performance of the Professional Services at the Facility.

5.3 Patient Scheduling: GSC shall be responsible for scheduling all Patients requiring the Professional Services at CSC. To the extent possible, GSC shall schedule such medical services in a consecutive order with one case promptly following the preceding case without delay. At the time of providing the applicable scheduling notice, GSC shall also inform AU ANESTH of any insurance or other reimbursement or billing information pertaining to those Patients listed on such schedule. All Professional Services required by GSC shall be rendered in accordance with Exhibit A. The last scheduled surgical case requiring Professional Services shall be in accordance with Exhibit A, unless otherwise authorized by AU ANESTH in advance thereof. Unless otherwise agreed to by AU ANESTH, all Professional Services shall be performed only at GSC. GSC shall arrange for each Patient to be physically available at GSC at a designated time and date (which may or may not immediately precede the performance of the applicable Professional Services) for the purpose of allowing AU ANESTH and its representatives to conduct an appropriate pre-anesthetic screening examination of such patient.

5.4 Patient Medical Profile: In advance of AU ANESTH's rendering of any Professional Services to any Patient, GSC shall deliver to and obtain from each such Patient a medical profile questionnaire in such form as provided by AU ANESTH which profile shall include, without limitation, the history and copies of appropriate pre-surgical lab and diagnostic tests for such Patient and be of such other content and contain such other information as AU ANESTH shall require in order to evaluate the physical and medical condition of such Patient. GSC shall provide AU ANESTH with each such completed medical profile sufficiently in advance of the rendering of any applicable Professional Services to such Patient so that AU ANESTH may properly evaluate and administer the Professional Services required for such Patient. AU ANESTH will be solely responsible for pre anesthetic patient H&P.

5.5 Patient Consent and Notification Forms: GSC shall deliver to and obtain from each Patient on whose behalf any Professional Services are rendered, a consent and agreement specifying that (a) the Professional Services being provided by AU ANESTH to such Patient shall be rendered by a qualified representative of AU ANESTH, (b) such Patient shall be receiving a separate invoice for the Professional Services from AU ANESTH, and (c) such Patient shall be responsible for payment of all fees charged by AU ANESTH in rendering the Professional Services. Such consent and agreement shall be in a form provided by AU ANESTH in connection with such Patient's receipt of any Professional Services hereunder. GSC shall be responsible for obtaining a duly executed copy of such consent form from each Patient or legal guardian of such Patient requiring the Professional Services at GSC and shall provide AU ANESTH with a copy thereof prior to AU ANESTH's rendering of any Professional Services to such Patient hereunder. AU ANESTH will use documents and standards approved by Medicare, federal and state regulations.

5.6 Business Structure and Authority: GSC covenants, warrants and represents that (a) it is a legal business entity duly organized, validly existing and in good standing under the laws of the State of Georgia, (b) it has all necessary corporate/company power and authority to enter into this Agreement, to execute any and all instruments pursuant to this Agreement, and to perform its obligations hereunder, including any and all functions and duties incidental to fulfilling the purposes of this Agreement, (c) the respective execution of this Agreement by GSC's undersigned representative(s) has been duly authorized and constitutes GSC's legally binding and fully enforceable obligations and undertakings; and (d) GSC is not excluded from participation in any federal health care program and has not and will not appear on the Office of Inspector General's List of Excluded Individuals/Entities.

6 MUTUAL COVENANTS OF AU ANESTH AND GSC

6.1 Removal of Provider. If GSC desires to withdraw approval of a Provider, GSC must give 45 days prior written notice to AU ANESTH stating the reason or reasons for withdrawal. AU ANESTH may attempt to remediate the situation during the 45-day period, but unless the situation is successfully remedied, AU ANESTH will be required to remove said Provider from GSC at the end of the 45-day notice period.

6.2 Standards for Immediate Removal of a Provider: AU ANESTH will immediately remove a Provider who (a) suffers the loss or suspension of his or her license to practice medicine or nursing, (b) becomes excluded from participation in any federal health care program, (c) is convicted of any crime punishable as a felony involving moral turpitude, immoral conduct, or the provision of health care services, (d) suffers the loss, suspension or revocation of their DEA registration or (e) is impaired by alcohol or drugs.

6.3 Billing for Anesthesia Professional Services: AU ANESTH shall have the exclusive responsibility for the billing and collection of all charges for Professional Services rendered by Providers supplied by AU ANESTH at GSC. AU ANESTH shall separately bill and collect for Professional Services furnished by Providers to Patients. AU ANESTH shall comply with all requirements of the Medicare and Medicaid Programs and other third-party payer programs in billing for Professional Services. AU ANESTH will submit to GSC a Professional Services fee schedule for self-pay patients that it will periodically update. AU ANESTH's fee schedule will be submitted to GSC in accordance with all federal and state law, annually or upon occurrence of rate changes. GSC shall have no liability for any uncollected charges.

6.4 Billing Assistance: GSC shall provide AU ANESTH a copy of each Patient's admission record, charge ticket, and anesthesia record for which Professional Services are provided in order to assist AU ANESTH in collection of funds due for such Professional Services rendered at GSC under this agreement. AU ANESTH will provide free anesthetic to indigent cases in which GSC and physicians at GSC provide free services

6.5 Medical records: AU ANESTH will work with Providers to ensure that all medical records are properly prepared and filed with the appropriate attending Provider and GSC's medical records department, including reports of all examinations, procedures and other services performed by a Provider in GSC. The ownership and right of control of such medical records shall vest in GSC; provided, however, that AU ANESTH and the Provider shall have the right of access to such records consistent with law as necessary or requested by AU ANESTH or Provider for purposes of treatment, billing and healthcare operations or the defense or prosecution of any claim.

6.6 Production of Medical Records: Both parties agree to provide each other such Patient medical records as are customary and necessary to the maintenance and evaluation of an appropriate quality of medical care on a timely basis. In addition, the parties shall submit to each other on a timely basis a record of all services (medical and otherwise) rendered to patients and such reports as are customarily supplied in order for the parties to bill their patients and third-party payers for Professional and Facility Services provided at GSC and AU ANESTH.

6.7 Third-party payer requirements:

6.7.1 AU ANESTH acknowledges that GSC, from time to time, may have and execute agreements with health plans, health maintenance organizations, the Medicare or Medicaid programs or other public or private health care programs or insurance to provide benefits for health care services, including Professional Services, to the enrollees or other Patients covered by such agreements. AU ANESTH will use its best efforts to ensure that AU ANESTH and Providers under this Agreement participate in the same third party payer agreements as GSC, to assist in providing services that are covered under the Patients' benefit plans.

6.7.2 AU ANESTH agrees to make available to GSC such information and records as GSC may reasonably request to facilitate GSC's validation of reasonable cost or other claims for reimbursement in accordance with the requirements applicable to GSC pursuant to the Medicare and Medicaid programs.

6.7.3 Additionally, AU ANESTH agrees to make available upon request of the Secretary of Health and Human Services, the Controller General of the United States or any of their duly assigned representatives, this Agreement, and any books, documents, and records of AU ANESTH, as are necessary to certify the nature and extent of its contract. If AU ANESTH shall carry out any of its duties under this Agreement through subcontractors under a contract with a value or cost of $10,000 or more over a 12-month period, such contracts shall include a requirement consistent with this subparagraph.

6.8 Confidentiality: Neither GSC nor AU ANESTH shall disclose any privileged or confidential information which either obtains or learns as a result of this Agreement except as may be required in connection with audits conducted by third-party payers. GSC and AU ANESTH shall maintain the confidentiality of any medical records, business or financial records, and matters of practice of the other to which either shall have access or knowledge in compliance with each other's policies and any applicable state or federal law and will not disclose confidential information unless compelled by court

order. In furtherance of these practices, the parties acknowledge and agree that their respective rendering of professional medical services to Patients is being made pursuant to an "organized health care arrangement" with each of GSC and AU ANESTH constituting a "covered entity" as those terms are defined by the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Part 160 and Part 164, Subparts A and E (the "Privacy Rule"), promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (collectively "HIPAA"). As a consequence, GSC and AU ANESTH shall be responsible for (i) producing and providing to each Patient a joint notice (the "Joint Notice") conforming to the requirements imposed and in the manner of implementation required under HIPAA Regulation Sections 164.520(c) and (d) and (ii) documenting compliance with the provision of such Joint Notices to the Patients and retaining copies of all such Joint Notices so issued and any applicable acknowledgements of receipt thereof all in conformity with HIPAA Regulation Sections 164.520(e) and 164.530(j). GSC agrees to provide to AU ANESTH in advance a copy of any proposed Joint Notice intended to be utilized as contemplated hereunder for AU ANESTH's review and approval. Upon agreement of all parties as to the form and content of the Joint Notice, each party agrees to abide by the terms of such approved Joint Notice with respect to all protected health information created or received by such party as part of its participation in such organized health care arrangement. GSC is responsible for the maintenance and filing of all Patient medical records for so long as is required by all applicable laws, rules or regulations issued by any authority having jurisdiction over GSC.

6.9   Professional Liability Insurance:

   6.9.1   AU ANESTH agrees to furnish to GSC, upon execution of this Agreement and thereafter upon request, a certificate of insurance indicating liability insurance coverage of at least $1,000,000 for any one occurrence and $3,000,000 annual aggregate, which coverage may be a combination of professional and entity liability coverage. In addition, AU ANESTH shall ensure that each Provider maintains professional liability insurance coverage with limits of $1,000,000 for each occurrence and $3,000,000 annual aggregate. Such certificates shall reflect that GSC shall be given 30-days prior written notice of cancellation or termination of the policy. Further, if the insurance policies are written on claims-made basis, AU ANESTH and it providers will purchase "tail coverage" to ensure that any claims arising from Professional Services will be covered by insurance. This requirement will survive the termination of this Agreement.

   6.9.2   GSC agrees to furnish to AU ANESTH, at its request, a certificate of insurance indicating liability insurance coverage of at least $1,000,000 for any one occurrence and $3,000,000 annual aggregate, which coverage may be a combination of professional and entity liability coverage. In addition, GSC shall ensure that each GSC physician performing services at GSC maintains professional liability insurance coverage with limits of $1,000,000 for each occurrence and $3,000,000 annual aggregate. Such certificates shall reflect that AU ANESTH shall be given 30-days prior written notice of cancellation or termination of the policy. Further, if the insurance policies are written on claims-made basis, GSC and its physicians will purchase "tail coverage" to ensure that any claims arising from its medical services will be covered by insurance. This requirement will survive the termination of this Agreement.

6.10   Offers to the AU ANESTH Anesthesiologists, CRNAs and Personnel: GSC recognizes that AU ANESTH will incur substantial expenses associated with recruiting and staffing Providers for the Professional Services anticipated herein. In consideration of the special nature of the relationship between AU ANESTH and the Providers which AU ANESTH does or will retain or employ and that AU ANESTH's expenses associated with recruiting and training of such personnel is a costly and time consuming endeavor, GSC agrees that it will not, during the Term or any renewals hereof, or for a period of one (1) year following the termination of this Agreement, directly or indirectly enter into any agreement covering the same or similar Services as are provided for herein with any person who has provided Services to GSC under this Agreement unless AU ANESTH provides written consent and a compensatory fee in the amount of $50,000 per Provider is paid to AU ANESTH. The terms of such payment shall be set forth in the written consent. GSC shall be responsible for paying any legal expense incurred by AU ANESTH in obtaining or enforcing payment of the compensatory fee contemplated herein.

## 7 TERMINATION OF AGREEMENT

7.1 Effects of termination: Upon termination of this Agreement, neither party shall have any further obligation hereunder except for (a) obligations occurring prior to the date of termination; or, (b) obligations, promises or covenants contained herein which are expressly made to extend beyond the term of this Agreement. In the event of termination for breach of this Agreement, all services shall continue throughout the period of notice regardless of whether or not a cure has been achieved.

7.2 Termination for Breach: Should either party at any time violate any of the conditions of this Agreement or discontinue that party's obligations hereunder, the non-breaching party may give written notice of the breach and the offending party then shall have 30 days from the receipt of such notice to cure such breach. In the event that a breach of this Agreement shall not be cured to the satisfaction of the non-breaching party, this Agreement shall terminate at the end of the 30-day period.

## 8 INDEMNIFICATION

8.1 Indemnity of GSC: AU ANESTH agrees to indemnify, defend and hold GSC, its owners, officers, directors, employees and agents harmless from any loss, liability, claims, suits and reasonable expense arising from the negligent or intentional actions or omissions of AU ANESTH or the Providers supplied by AU ANESTH under this Agreement, such indemnification to be provided only for damages awarded in excess of professional or entity liability insurance carried by AU ANESTH.

8.2 Indemnity of AU ANESTH: GSC agrees to indemnify, defend and hold AU ANESTH, its owners, officers, directors, employees and agents harmless from any loss, liability, claims, suits and reasonable expense (including attorneys' fees) arising from the negligent or intentional actions or omissions of GSC or its employees under this Agreement, such indemnification to be provided only for damages awarded in excess of professional or entity liability insurance carried by GSC.

## 9 MISCELLANEOUS

9.1 Independent Contractor Status of AU ANESTH: It is expressly acknowledged by the parties hereto that AU ANESTH is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create an employer-employee relationship or a joint venture relationship between GSC and AU ANESTH, or to allow GSC to exercise control or direction over the manner or method by which AU ANESTH or the Providers perform the Ancillary and Professional services anticipated under this Agreement. AU ANESTH understands and agrees that (a) the Providers will not be treated as employees for Federal tax purposes; (b) GSC will not withhold on behalf of AU ANESTH or the Providers pursuant to this Agreement, any sums for income tax, unemployment insurance, Social Security or any other withholding pursuant to any law or requirement of any governmental body; or (c) GSC will not make available to AU ANESTH or the Providers any of the benefits afforded to the employees of GSC. Any such payments, withholdings and benefits, if any, are the sole responsibility of AU ANESTH and/or the Providers.

9.2 Compliance with Law; Change of Law: It is the express intent of the parties hereto to comply in all respects with the provisions of both Federal and State laws regarding kickbacks, referrals and the corporate practice of medicine, and all services provided hereunder are provided at the fair market value of such services. In the event of (a) the adoption, amendment or repeal of any ordinance, statute, regulation or administrative instructions, or (b) the issuance of any decision by a judicial or administrative body of competent jurisdiction, the effect of which is either to cause any word, phrase, sentence or section of this Agreement to constitute a violation of law, or to have a material adverse effect on the practical realization of the benefits anticipated by any party; or (c) a written opinion issued by independent legal counsel retained by any Party which concludes that any word, phrase, sentence or section of this Agreement is likely to result in a Party being viewed by the relevant enforcement agencies as in violation of any law, then such Party (the "Noticing Party") shall have the right to deliver written notice hereof to the other Parties setting forth the word, phrase, sentence or section in question, the actual or potential violation of law and the basis upon which the Noticing Party has concluded that a Party has or is likely to be viewed as having violated said law and/or the basis for Noticing Party's conclusion that there is a material adverse effect on the practical

realization of the benefits anticipated by a Party; provided, in the event the Noticing Party's basis for such a notice, in whole or in part, is a written opinion issued by its independent legal counsel, the Noticing Party shall deliver a copy of said opinion as part of the Notice it delivers to the other Party; provided, further, shall include one or more proposed amendments to this Agreement which shall be intended to cure such actual or potential violation of law and/or to the extent reasonable to restore the status quo ante, cure the material adverse effect on the realization of the benefits anticipated by a Party. In the event the Parties are not able to agree upon and enter into one or more amendments to this Agreement, which are intended to cure said actual or potential breach of law and/or, to the extent reasonable, restore the status quo ante, within sixty (60) days after the delivery of the Noticing Party's notice, any Party may terminate this Agreement, without cause, on a date certain by delivering notice of its intention to the non-terminating Parties not less than thirty (30) days prior to said date. GC and AU ANESTH will not disclose confidential information unless compelled by court order.

9.3  Governing law: This Agreement has been executed and delivered and shall be interpreted, construed, and enforced pursuant to and in accordance with the laws of the State of Georgia.

9.4  Assignment: No assignment of this Agreement or rights of obligation hereunder shall be valid without the specific written consent of both parties hereto, which consent shall not be unreasonably withheld, except that AU ANESTH may assign this Agreement without consent of GSC to an affiliate of AU ANESTH or to any successor in interest in connection with the sale or transfer of all or substantially all of AU ANESTH's assets, provided that AU ANESTH provides GSC with 30 days advance written notice of any assignment and any other reasonable information concerning the assignee requested by GSC.

9.5  Waiver of breach: The waiver by either party of a breach or a violation of any portion of this Agreement in any one instance shall not operate as or be construed to be a waiver of any subsequent breach of the same or other provision hereof.

9.6  Enforcement: The parties agree that all disputes concerning this Agreement shall be submitted to binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association and the provisions contained herein. The arbitration shall be conducted in Athens, Georgia by one arbitrator. The party initiating arbitration shall give the other party notice of the matter in dispute. If the parties fail to agree upon an arbitrator within ten (10) days after notice of initiation of the arbitration is given, then the American Arbitration Association shall select the arbitrator. All determinations and the final decision of the arbitrators shall be made in writing. The fees and expenses of the arbitrators shall be awarded by the arbitrators in their discretion as part of the award. The arbitrator's award shall be binding on the parties hereto and may be entered in any court of competent jurisdiction.

9.7  Force Majeure: Neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service or employment deemed resulting directly or indirectly from acts of God, civil or military authority, acts of public enemy, terrorism, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, strikes or any similar or dissimilar cause beyond the reasonable control of either party.

9.8  Severability: The validity or unenforceability of any provision of this Agreement shall not affect the remainder of this Agreement which shall remain in full force and effect in accordance with its terms.

9.9  Article and other headings, Interpretation: The articles and other headings contained in this Agreement are for reference purposes only and shall not affect, in any way, the meaning or interpretation of this Agreement. No provision of this Agreement shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, structured, dictated or required such provision.

9.10 Amendments and agreement execution: This Agreement and any amendments hereto shall be in writing and may be executed in multiple copies, with each copy being deemed an original but all multiple copies together shall constitute one and the same instrument. No modification or amendment to this Agreement shall be valid unless done as set forth herein. This agreement should also be amended to reflect any changes in federal or state regulations.

9.11 Entire Agreement: This Agreement supersedes all previous contracts and constitutes the entire agreement between the parties. Neither party shall be entitled to benefits other than those specified herein. No oral statements or prior written material, not specifically incorporated herein, shall be of any force and effect, and no

changes in or additions to this Agreement shall be recognized unless incorporated herein by amendment as provided herein. Both parties specifically acknowledge that in entering into and executing this Agreement, they rely solely upon the representations and covenants contained in this Agreement and no others.

9.12 Notices: Any notice, demand or communication required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered or mailed by a prepaid certified mail return receipt requested addressed as follows:

| To GSC: | To AU ANESTH: |
|---|---|
| Georgia Surgi Care | AU Anesthesia |
| 367 Athens Hwy, Suite 100 | 2470 Daniels Bridge, Bldg. 100, Ste. 141 |
| Loganville GA 30052 | Athens GA 30606 |
| | |
| Attn: Dr. Chris Ibikunle | Attn: Paul Weir |

or to such other address and to the attention of such other persons or officers as either party may designate by written notice.

IN WITNESS WHEREOF, the parties have signed this Agreement to be effective as of the date set forth above:

For GSC: Georgia Surgi Care
367 Athens Hwy Ste 100
Loganville GA 30052

Name: /s/ B. Ruml
Dr. Chris Ibikunle

Date: 10/26/12

For AU ANESTH: AU Anesthesia
2470 Daniels Bridge, Bldg. 100, Ste. 141
Athens GA 30606

Name: /s/
Paul Weir

Date: 1-/29/12